THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* WILLIAM SAMUEL KNIGHT, Defendant and Appellant.

No. 14728. Argued December 7, 1950.—Decided January 31, 1951.

Celestino *Iriarte* and Celestino *Iriarte, Jr.,* for appellant. *Vicente Géigel Polanco, Attorney General,* and *J. Rivera Barreras, Fiscal of the Supreme Court,* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

The District Attorney of San Juan accused William Samuel Knight of murder in the first degree charging him with having killed Pedro Cortés Chévere about September 28, 1948, in Santurce. After a trial by jury, the latter brought a verdict of guilty of murder in the second degree.

The theory of the district attorney as stated to the gentlemen of the jury was to the effect that on the said date a meeting of the Estadista Party was being held at the place known as El Fanguito; that about 6 o'clock p. m. people had gathered around the platform and approximately at the same time defendant Knight was carrying, together with three other persons and as propaganda in order to attract people to the meeting, a poster along Avenue "E" of said ward; that a cow with a woman's face was drawn on it; that when they were at a short distance from the military road, Pedro Cortés Chévere stood in front of the persons carrying the poster and asked them to take it down and to stop that kind of propaganda; that Cortés Chévere seized the poster and upon taking it down the defendant fired several shots at him with a pistol he carried; that when Cortés Chévere fell wounded on the street he took out a revolver and fired several shots at the defendant and

his companions as they fled; that a pregnant lady who was nearby was also wounded in her stomach; and that the lady and the baby were saved but not Cortés Chévere who died a few hours later as a result of the bullet wounds. The theory of the defendant was that he acted in self-defense and that he fired his pistol against Cortés Chévere because the latter tried to prevent him and his companions from parading said poster and because while two persons were carrying it the deceased suddenly appeared and asked them to take down the poster and fired the revolver he carried; and that defendant's action was in self-defense to prevent that as a result of the blunder committed by Cortés Chévere any one of them be killed or wounded. Both parties offered exhaustive oral evidence substantiating their respective theories.

After all the evidence was introduced, and the district attorney and the defense had made their closing arguments to the jury and while the court was giving the general instructions to the jury an incident took place, almost at the end, which we shall copy verbatim:

"District Attorney: We are going to ask the court to explain which is the law in connection with the publication of cartoons.

"Judge: The law in connection with the publication of cartoons in Puerto Rico is the following: Section 253 of the Penal Code ...

"Mr. Ortiz Reyes: Is the defendant William Samuel Knight being tried for murder in the second degree or for a particular Section, that is, the publication of cartoons?

"Judge: It is a question of law. The evidence is to the effect that the defendant and others were carrying a poster with a cartoon; that a person other than the defendant intervened to prevent said poster from circulating about said place. Of course it is proper that the gentlemen of the jury know which is the law with respect to that; whether or not said person who intervened could do it.

"*It is obvious that every citizen has the right, or rather the obligation, when in his presence a crime is being committed or is attempted to be committed, to try to prevent it.* (Italics ours.)

"We shall now turn to § 253 of the Penal Code which deals with the publication of cartoons:

"Mr. Ortiz Reyes: Then we are going to take an exception to said instruction, if Your Honor includes it and, besides, if Your Honor gives said instruction he should also explain about the law in connection with the amount of force that should be used, or may be used, in order to prevent the commission of said crime.

"Judge: I shall.

"Section 253 of the Penal Code reads as follows:

" 'PUBLICATIONS OF PORTRAITS.—OR CARICATURES.—It shall be unlawful to publish in any newspaper, handbill, poster, book or serial publication, or supplement thereto, the portrait of any living person a resident of Puerto Rico other than that of a person holding a public office in Puerto Rico, without the written consent of such person first had and obtained: *Provided,* That it shall be lawful to publish the portrait of a person convicted of a crime. It shall likewise be unlawful to publish in any newspaper, handbill, poster, book or serial publication or supplement thereto, any caricature of any person residing in Puerto Rico, which caricature will in any manner reflect upon the honor, integrity, manhood, virtue, reputation, or business or political motives of the person so caricatured, or which tends to expose the individual so caricatured to public hatred, ridicule or contempt . . . .'

"So that if you are going to draw a cartoon of myself, as I hold a public office, you do not need my consent before publishing it, provided that it shall be lawful to publish the portrait of a person convicted of a crime. It shall likewise be unlawful to publish in any newspaper, handbill, poster, book or serial publication or supplement thereto, any caricature of any person residing in Puerto Rico, which caricature will in any manner reflect upon the honor, integrity, manhood, virtue, reputation, or business or political motives of the person so caricatured, or which tends to expose the individual so caricatured to public hatred, ridicule or contempt and that shall be a misdemeanor.

"*Of course the amount of force which will be used in the prevention of said crime is not the same amount of force which may be used in the prevention of a case, for example, of murder.* If a person has a revolver in his hands and is going to fire at John I can step forward, fire at that person and kill him to prevent him from killing John. *If a person is distributing leaflets*

*in which I am being defamed and offended and I understand it is an offense, I am not justified in shooting said person who is distributing said leaflets. I may seize them, take them away and maybe even have a fist fight with said person."* (Italics ours.)

After he was convicted of murder in the second degree and sentenced from 10 to 30 years' imprisonment in the penitentiary at hard labor, Knight appealed. The second error assigned to support his appeal is to the effect that "the court erred in instructing the jury on § 253 of the Penal Code", alleging, in arguing it, among other things that "said instruction obviously tried to justify the provoking action of Pedro Cortés Chévere", and that "the jury could believe according to the instruction given to it by the court that Pedro Cortés Chévere as any other citizen had not only the right but the duty to try taking the poster away from the defendant and his companions because they were committing a crime punishable by § 253 of the Penal Code."

In discussing the preceding assignment the *Fiscal* of this Court insists on the fact that although the defense stated that it took an exception if the court undertook to instruct the jury in connection with the quoted Section of the Penal Code, it stated, nevertheless, that if the court gave said instruction it should also instruct the jury on the amount of force which should be used by a person in order to prevent the commission of a crime. The court agreed to the petition of the defense and then gave the pertinent instructions to which the defense did not take an exception. The *Fiscal* understands that the attitude of the defense implied a waiver to its objection. We disagree. The objection of the defense to the instruction that the court intended to give was evident. The fact that it stated that if said instruction were given it should likewise instruct the jury in respect to the degree of force which could be used in order to prevent the commission of a crime was not equivalent in any way to a waiver of its exception but on

the contrary to the intention on the part of the attorney for the defense to protect as far as possible the rights of the defendant.

Although § 52 of the Penal Code provides that "Resistance sufficient to prevent the offense may be made by the party about to be injured: . . . (2) to prevent an offense against his person or his family or some member thereof," and although § 53 of the same legal body provides that: "Any other person in aid or defense of the person about to be injured may make resistance sufficient to prevent the offense," those Sections do not have the scope attributed to them by the lower court in charging the jury.

It is undeniable that in order to prevent an offense against his person or any member of his family every human being has the right to make the necessary resistance and that a stranger in aid of another human being against whom some harm is attempted may likewise offer resistance. This does not mean, nevertheless, that every citizen has the right or better still the duty when a crime is committed or attempted to be committed in his presence to try to prevent it. The instruction given doubtless went beyond the text of the Act as has been stated and also beyond the construction which should be given to it. Said Sections do not mean that a stranger has the right or the obligation to interfere in order to prevent that *any* offense be committed. They merely authorize a person against whom bodily harm, physical injury or personal aggression is attempted to make the necessary resistance to prevent the injury against his person or to prevent an assault against any member of his family. They equally authorize any other person to offer the necessary resistance to prevent said bodily injury on a fellow citizen. Nevertheless, this does not mean in any way that any other person, as Cortés Chévere in this case, could interfere to stop the commission of an alleged offense of libel. This is our construction of the aforesaid Sections. To construe them in the way the court *a quo* did would be

tantamount to allowing citizens to take the law into their own hands. According to Wharton on Homicide, 3d ed., on p. 776, § 521, "A person has a right to use violence in defense of another only when the imperiled person would have been justified in using it in his own defense." See also 4 Am. Jur., p. 155, § 54.

On the other hand, although § 117 of the Code of Criminal Procedure provides that "a private person may arrest another: (1) for a public offense committed or attempted in his presence . . ." there is no evidence in the record that Cortés Chévere tried to arrest anybody.

The error committed was doubtless prejudicial to the defendant because it could influence the minds of the jury in the sense that when Cortés Chévere asked the defendant and his companions to give him the poster he was exercising a right granted to him under the Act. It was a reversible error.

Given the conclusion we have reached we need not pass on the first error assigned by appellant to the effect that the verdict rendered is contrary to the evidence and the law.

The judgment appealed from will be reversed and a. new trial ordered.

Mr. Chief Justice De Jesús did not participate herein.